UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ESTHER YANG,                                   :
                                               :
              Plaintiff,                       :     04 Civ. 05460 (RMB)
                                               :
                                               :
     -against-                                 :     **DECISION AND ORDER**
                                               :
STATE OF NEW YORK, CITY OF NEW YORK,            :
NEW YORK STATE UNIFIED COURT SYSTEM,:
                                               :
              Defendants.                      :
------------------------------------------------------------X

**I.     Background**

On or about July 19, 2004, Esther Yang ("Plaintiff" or "Yang"), appearing pro se, filed an Amended Complaint ("Am. Compl.") against the State of New York ("State"), the City of New York ("City"), and the New York State Unified Court System ("State Court System") (collectively, "Defendants").[1] Plaintiff alleges, among other things, that Defendants discriminated against her on the basis of race, country of origin, sexual orientation ("as a heterosexual woman"), and socioeconomic status during the course of her divorce proceedings ("State Divorce Action") held before the Honorable Joan Lobis, Justice of the Supreme Court of the State of New York, New York County.  (Am. Compl. ¶ 3).  Specifically, Plaintiff alleges that (i) her divorce trial was "never an impartial, non-bias, nondiscriminatory and fair trial"; (ii) "[t]he trial court [chose] to discriminate against [her] and put [her] life in danger when [it] gave [her husband] access 24/7 to [her] daughter and [her] residence"; (iii) she had to "endure being the one and only minority in the trial courtroom"; (iv) Justice Lobis "appointed Caucasian experts" to "diagnose [her]"; (v) Justice Lobis gave "[her] husband permission to steal [her]

---

[1] Plaintiff filed her Original Complaint on July 14, 2005.  The Amended Complaint and the Original Complaint appear to be identical.

1

legal files to gain procedural and tactical advantage"; (vi) and the judge also "allow[ed] [her husband] to remove [their] daughter and [her] belongings, change the locks and [gave] him the right to be the sole representative, be the attorney in fact and have 24/7 access to [her] residence."  (Id. ¶¶ 8-9, 16-17, 20, 23-24).[2]  Plaintiff seeks to "penalize all of the above defendants," have "[a]ll judges appointed without [her] voice as part of the 2/3 of the people be voided for reconsideration," and also requests the State Commission on Judicial Conduct be reformed "to have diversity [] to represent each minority group to increase sensitivity to immigrant litigants."  (Id. ¶ 41).  Plaintiff further seeks "financial relief as the court deem[s] appropriate for over 2 years of [her] life wasted in their dysfunctional Judicial Branch."  (Id.).

On or about October 12, 2004, Defendants filed a joint motion to dismiss ("Motion to Dismiss") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").  (See Memorandum of Law in Support of a Joint Motion to Dismiss ("Def. Mem.")).  Defendants argue, among other things, that (i) "the Rooker-Feldman doctrine precludes this Court from exercising subject matter jurisdiction over [P]laintiff's claim against the [D]efendants"; (ii) Plaintiff's claims against the State and the State Court System should be dismissed because the Eleventh Amendment "bars a suit in a Court of the United States by a citizen of a state against that state, or one of its agencies"; and (iii) "Plaintiff has identified no policy, practice or custom of the City that deprived her of any federal or constitutional right." (Def. Mem. at 6, 17, 20).

---

[2] Plaintiff also alleges that "[t]he Governor of New York appoints the Chief Judge to [the] NY State Unified Court System without the consent of 2/3 of its people" and that the New York State Commission on Judicial Conduct "meet[s] behind closed doors" and keeps its findings secret from the citizens of the State.  (See Am. Compl. ¶¶ 26-27, 32-33).

Plaintiff failed to serve and file a timely response to Defendants' Motion to Dismiss, but she did file a document entitled "Motion for Reconsideration" ("Reconsideration Motion") on or about March 18, 2005, to which she attached as Exhibit C a memorandum of law, dated December 27, 2004, in opposition to Defendants' Motion to Dismiss. (See Reconsideration Motion, Ex. C; Objecting Motion to Dismiss the Case, dated December 27, 2004 ("Plaintiff's Memorandum" or 'Pl. Mem.")). The Court determined that "even though untimely, the Court will consider [Plaintiff's Memorandum in opposition to Defendants' Motion to Dismiss] attached as Exhibit C to the Reconsideration Motion . . . ." (See Order, dated April 6, 2005).[3]

On or about April 20, 2005, the City filed a Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss ("Reply Mem."). **For the reasons set forth below, Defendants' Motion to Dismiss is granted and the Amended Complaint is dismissed.**

## II.     Standard of Review

When considering a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), the court "must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff." Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996); see also Jaghory v. New York State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997). However, "legal conclusions, deductions, or opinions couched as factual allegations are not given a presumption of truthfulness." L'Eureopeenne de Banque v. La Republica de Venezuela, 700 F. Supp. 114, 122 (S.D.N.Y. 1988). Dismissal of the complaint is proper when "it appears beyond doubt that plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief."

---

[3] Plaintiff also filed a document entitled "Motion to Strike Ex-Parte Communications and Sanction Defendants," on or about April 14, 2005. The Court denied this motion (without prejudice) as not being in accordance with Court rules requiring a pre-motion letter and a pre-motion conference. (See Order, dated April 18, 2005).

Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002).

Where a plaintiff is proceeding pro se, the Court will construe the complaint liberally "to raise the strongest arguments that [it] suggest[s]." Haines v. Kerner, 404 U.S. 519, 520-521 (1972) (per curiam) (citation omitted).

**III.   Analysis**

   **A.   Rooker-Feldman Doctrine**

Defendants argue that insofar as Plaintiff's Amended Complaint seeks a reversal or modification of the judgment in the State Divorce Action, it should be dismissed under the Rooker-Feldman doctrine because "lower federal courts have no power to review state court proceedings or to set aside state court decisions . . . ." (Def. Mem. at 7).[4] Plaintiff counters that "[t]his is not a review of a state court judicial judgment," and that she is "enforcing [her] Constitutional rights that [she] cannot enforce in the state [courts] due to [its] systematic pattern [and] history [of] abuse." (Pl. Mem. ¶ ¶ 2, 6). She also claims she was denied "due process" in the State Divorce Action because, among other things, Justice Lobis "allow[ed] [her] ex-husband . . . to sell [allegedly jointly owned property] without [her] signature when the deed [was] in both [her and her ex-husband's] names." (Id. ¶ ¶ 21, 134).[5]

Federal district courts do not have jurisdiction to reverse or modify a state court judgment. See Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. ____, 125 S.Ct. 1517, 1521 (2005). The Rooker-Feldman doctrine applies in "cases brought by state-court losers

---

[4] District of Columbia Court of Appeals, et al. v. Feldman, 460 U.S. 462, 482 (1983) ("a United States District Court has no authority to review final judgments of a state court in judicial proceedings"); Rooker v. Fidelity Trust Co. et al., 263 U.S. 413 (1923).
[5] The parties have not provided information with respect to the appellate history, if any, of the State Divorce Action.

4

complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Id. at 1521-1522.  Rooker-Feldman bars a losing party in state court "from seeking what in substance would be appellate review of the state court judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." Id. at 1523; Fastag v. Kelly, No. 04 Civ. 9037SAS, 2005 WL 1705529, at *3 (S.D.N.Y. July 19, 2005); see also Fariello v. Campbell, 860 F. Supp. 54, 65 (E.D.N.Y. 1994) ("A plaintiff may not seek a reversal of a state court judgment simply by recasting [her] complaint in the form of a civil rights action pursuant to 42 U.S.C. § 1983.").

### B. Eleventh Amendment Immunity

Defendants argue that Plaintiff's claims against the State and the State Court System should be dismissed because the "Eleventh Amendment . . . bars a suit in a Court of the United States by a citizen of a state against that state, or one of its agencies . . . ."  (Def. Mem. at 17). Plaintiff contends that "[t]he [Eleventh] [A]mendment does not apply to absolute immunity when you accept federal funding," "[s]tate actors/defendants cannot claim the [Eleventh] Amendment to protect them while [she] ha[s] nothing," and "States [are] expressly [not] immune from suits involving situations related to incidents involving [any] program that receives assistance in Federal funding."  (Pl. Mem. ¶ ¶ 86-88).

The Eleventh Amendment to the United States Constitution bars suit in federal court by a private party against a state unless the state has consented to the suit or Congress has expressly abrogated the state's immunity.[6]  See Bd. Of Tr. of Univ. of Ala. v. Garrett, 531 U.S. 356, 363-

---

[6] "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.

64 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting states may not be sued by private individuals in federal court.").

Defendants argue persuasively that Plaintiff's complaint against the State and the State Court System should be dismissed because "the Eleventh Amendment absolutely bars suits against the State or one of its agencies for monetary relief, as well as suits seeking declaratory and injunctive relief." (Def. Mem. at 17-18). "The State of New York has not consented to suit in federal court," (Def. Mem. at 17), and 42 U.S.C. § 1983 does not abrogate a state's immunity to suit in federal court. See Quern v. Jordan, 440 U.S. 332, 345 (1979); Dube v. State Univ. of New York, 900 F.2d 587, 594 (2d. Cir. 1990); see also Fariello, 860 F. Supp. at 67 ("judges are absolutely immune from civil damage suits relating to the exercise of their judicial functions").

### C. Failure to State a Claim Against the City

Defendants argue that "[t]here [is] no allegation of municipal policy or custom, a needed prerequisite for a [42 U.S.C. §] 1983 claim against the City," that "the City is not responsible for the State judicial system or Justice Lobis," and that "no allegation arising from the conduct of a State court officer or from the operation of the State court system could possibly implicate the City's policies, practices or customs." (Def. Mem. at 16, 20; Reply Mem. at 7). Plaintiff argues that the City "knew or should have known about the problems but chooses to do nothing or not enough," and that Defendants are wrong in claiming that the City "has nothing to do with judges." (Am. Compl. ¶ 14, Pl. Mem. ¶ 60).

In order to state a valid 42 U.S.C. § 1983 ("Section 1983") claim against a municipality, a plaintiff must usually allege that her constitutional injuries were the result of "a municipal policy or custom." Monell v. Dep't of Soc. Servs. of the City of New York et al., 436 U.S. 658, 690 (1978); see also Leatherman v. Tarrant County Narcotics Intelligence and Coordination

Unit, 507 U.S. 163, 166 (1993). None of Plaintiff's allegations implicate the City or any City "policies, practices or customs." (Reply Mem. at 7). Plaintiff's claims arise from the alleged actions of Justice Lobis, a judge in the State Court System. There is no valid Section 1983 claim where, as here, Plaintiff alleges that the City "should be responsible" for the alleged discrimination she faced in the State Divorce Action. (Am. Compl. ¶ 14).

## IV.  Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss is granted and the case is dismissed with prejudice. See Fariello, 860 F. Supp. at 72. The Clerk of the Court is respectfully requested to close this case.

Dated: New York, New York
       August 2, 2005

*RMB*
_____
RICHARD M. BERMAN, U.S.D.J.